**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SUSAN COPPOLA *on behalf of* PATRICIA J. LANDERS, *Plaintiff*, v. AHC FLORHAM PARK LLC and BROOKDALE SENIOR LIVING INC., *Defendants*. | Civil Action No. 20-7169 **OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter involves a dispute over Patricia J. Landers' care at Defendants' assisted living community in Florham Park, New Jersey. The Court must resolve a threshold issue – whether Plaintiff[1] must pursue her claims in arbitration. Presently before the Court is Defendants' motion for summary judgment to resolve this issue. D.E. 22. Plaintiff filed a brief in opposition to Defendants' motion, D.E. 25, to which Defendants replied, D.E. 31. The Court reviewed all submissions made in support and in opposition to the motion and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).[2] For the reasons stated

---

[1] Plaintiff in this matter was originally Judy Aiello on behalf of Patricia J. Landers. Ms. Landers passed away in November 2021, D.E. 32, after this motion was fully briefed. Non-party Susan Coppola filed a motion to substitute herself, as administrator of the estate of Patricia J. Landers, as Plaintiff pursuant to Federal Rule of Civil Procedure 25, D.E. 43, which Defendants did not oppose, D.E. 44. The Court granted Plaintiff's unopposed motion on June 1, 2022. D.E. 45. The substitution does not impact the instant motion.

[2] For purposes of this Opinion, the Court refers to Defendants' brief in support of their motion for summary judgment as "Defs. Br." (D.E. 22-2); Plaintiff's brief in opposition as "Plf. Opp." (D.E.

below, Defendants' motion is **GRANTED**.

   I.   **FACTUAL AND PROCEDURAL BACKGROUND**

From January 2020 to April 2020, Patricia Landers was a resident at Brookdale Florham Park ("Brookdale"), an assisted living community in Florham Park, New Jersey. Plaintiff initially filed suit in New Jersey state court, asserting multiple tort and statutory claims against Defendants. Defendant AHC Florham Park, LLC owns and operates the Brookdale facility and is a wholly owned subsidiary of Defendant Brookdale Senior Living, Inc. D.E. 1. Defendants removed the matter to this Court on June 12, 2020, based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. *Id.*

Defendants subsequently filed a motion to stay the matter and compel arbitration, based on a clause the Residency Agreement. Defendants maintained, D.E. 3, that the January 8, 2020 Residency Agreement ("Agreement") governed Landers' residence at Brookdale, and that Plaintiff is required to pursue her claims in arbitration pursuant to the following clause in the Agreement:

> Any and all claims or controversies arising out of, or in **any** way relating to, this Agreement or any of your stays at the Community, excluding any action for involuntary transfer or discharge, and including disputes regarding interpretation, scope, enforceability, unconscionability, waiver, preemption and/or violability of this Agreement, whether airing out of Local, State or Federal law . . . shall be submitted to binding individual arbitration, as provided below, and shall not be filed in a court of law. **The parties to this Agreement further understand that a judge and/or jury will not decide their case.**

Berkowitz Decl., Ex. J at § V.A.1 (emphases in original). D.E. 3. Plaintiff opposed the motion,

---

29-1); and Defendants' reply brief as "Defs. Reply" (D.E. 31). Defendants also rely on their Statement of Material Facts ("DSOMF"), D.E. 22-1; response to Plaintiff's Supplemental Statement of Undisputed Material Facts, D.E. 31-1; and two Declarations of Jonathan L. Berkowitz and their supporting exhibits, D.E. 22-3, 31-2. Plaintiff additionally relies on three declarations, D.E. 25-1, -2, -3; her supplemental Statement of Undisputed Material Facts ("PSOMF"), D.E. 27; and response to Defendants' Statement of Material Facts (Plf. Resp. to DSOMF"), D.E. 28.

arguing that the arbitration clause is invalid and unenforceable.  D.E. 4.  On January 13, 2021, Judge Wigenton denied Defendants' motion and ordered that the parties conduct limited discovery on the issue of arbitrability.  D.E. 6, 7.  After completing discovery as to arbitrability, Defendants filed the instant motion.[3]  Again, Defendants seek to stay this matter and compel Plaintiff to submit to arbitration pursuant to the Residency Agreement.  D.E. 22.  The matter was transferred to the undersigned on April 7, 2022.  D.E. 42.

## II.     SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment.  *Id.*  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)).  A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for

---

[3] "[I]f the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then 'the parties should be entitled to discovery on the question of arbitrability.'"  *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 479 (E.D. Pa. 2011)).  After limited discovery, "the court may entertain a renewed motion to compel arbitration, . . . judging the motion under a summary judgment standard."  *Id.*

3

trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

### III.   ANALYSIS

Plaintiff first argues that Defendants do not establish that the Federal Arbitration Act ("FAA") governs this dispute because Defendants fail to put forth evidence demonstrating that the Agreement affected interstate commerce. Plf. Opp. at 3 n.1. Defendants counter that the Court can conclude as a matter of law that interstate commerce "emanat[es] from the provision of senior care," without the need for specific proof as to the impact on interstate commerce. Defs. Reply at 1. The FAA "creates a body of federal substantive law establishing and governing the duty to

honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009) (citing 9 U.S.C. § 1 *et seq.*). Section 2 of the FAA provides as follows:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The term "involving commerce" is "the functional equivalent of the . . . term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizen Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). "[T]he FAA encompasses a wider range of transactions than those actually . . . within the flow of interstate commerce." *Id.* at 56. Thus, the FAA reaches transactions "without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice subject to federal control." *Id.* at 56-57.

Courts have determined that nursing home agreements involve interstate commerce, without requiring specific evidence from the parties. *See, e.g.*, *Portfolio One, LLC v. Joie*, No. 17-579, 2019 WL 291157, at *3 (D.N.J. Jan. 23, 2019); *Brown ex rel. Hall v. 5101 N. Park Drive Operations, LLC*, No. A-5372-12T2, 2014 WL 1613648, at *2 (N.J. Super. Ct. App. Div. Apr. 23, 2014). Moreover, Defendant Brookdale Senior Living is a Delaware corporation with its principal place of business in Tennessee. Notice of Removal ¶¶ 12-13. Defendant AHC Florham Park, LLC is a limited liability company that owns and operates the Brookdale facility in Florham Park, Compl. ¶ 18, and its sole member is a citizen of Delaware and Tennessee, Notice of Removal ¶¶ 10-11. Finally, in the Residency Agreement, the parties agreed that Landers' stay at Brookdale

"substantially involve[s] interstate commerce," stipulated that the FAA "shall exclusively apply to the interpretation and enforcement of this Agreement," and agreed that the arbitration provision "is entered into pursuant to" the FAA. Berkowitz Decl., Ex. J, § 5.A.2, D.E. 22-3.

The Court is satisfied that the FAA applies in this matter.

### A.  Representative or Personal Capacity

"Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co.*, 584 F.3d at 523 (citing *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)). To determine the validity of an arbitration agreement, courts apply "ordinary state-law principles that govern the formation of contracts." *Kirleis*, 560 F.3d at 160 (quoting *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995)). To be enforceable under New Jersey law, an arbitration agreement "must reflect that [a party] has agreed clearly and unambiguously to arbitrate the disputed claim."[4] *Leodori v. CIGNA Corp.,* 814 A.2d 1098, 1104 (N.J. 2003). In other words, "[a]n agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 312-13 (N.J. 2014) (quoting *NAACP of Camden Cnty. E. v. Foulke Mgmt.*, 24 A.3d 777, 790 (N.J. App. Div. 2011)). Mutual assent requires that the parties understand the terms to which they purportedly agree. "[B]ecause arbitration involves a waiver of the right to pursue a case in a judicial forum, 'courts take particular care in assuring the knowing asset of both parties to arbitrate, and a clear mutual understanding of

---

[4] The parties apply New Jersey law to their arguments. Thus, the Court does as well. *See Manley Toys, Ltd. v. Toys R Us, Inc.,* No. 12-244737, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case." (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999))).

the ramifications of that assent.'" *Id.* (quoting *Foulke*, 24 A.3d at 790-91).

Defendants rely on the arbitration clause in the Residency Agreement, which was executed by Susan Coppola, one of Landers' daughters, and Donna Martin, Brookdale's Executive Director. Defs. Br. at 6; *see also* Berkowitz Decl., Ex. J at 14. Landers previously designated Coppola as her attorney-in-fact through a Durable General Power of Attorney (the "POA").[5] Berkowitz Decl., Ex. I. Defendants maintain that the record unequivocally reflects that Coppola mutually assented to the terms of the Agreement on Landers' behalf, pursuant to the POA.[6] Defs. Br. at 6. Plaintiff counters that Coppola signed in her personal capacity, meaning that Landers did not mutually assent to arbitration. Plf. Opp. at 5.

To demonstrate that Coppola signed in her personal capacity, Plaintiff relies on Brookdale Senior Living, Inc.'s training materials, which mandate certain signature formats. Martin testified that if a non-resident signs on behalf of a resident as a legal power of attorney, guardian, trustee or conservator, the signature must read "Jane Doe POA for John Doe." Berkowitz Decl., Ex. F at 40:7-41:15. The training document provides that it is "essential to the enforceability to the Residency Agreement that it has the appropriate signatures and is dated correctly." Levy Decl., Ex. 5 at 19, D.E. 25-3. But a signature without the proper designation does not necessarily make a Residency Agreement unenforceable per the training materials. And Plaintiff provides no legal

---

[5] While not identified by any party, the relevant provision of the POA appears to be Landers' delegation for Coppola "to take all steps and remedies necessary or appropriate for the conduct and management of my business and personal affairs, and for recovering, obtaining and holding all real or personal property including debts, interest, demands, duties, sums of money or any other things whatsoever[.]" Berkowitz Decl., Ex. I at 2.

[6] The parties do not appear to dispute that Defendants were aware of the POA and knew that Landers appointed Coppola as her attorney-in-fact when executing the Agreement in January 2020. *See* Berkowitz Decl., Ex. F at 47:16-17 (Martin explaining that "[h]er daughter, who is the POA, Susan Coppola" signed the Agreement).

authority to support her position.

Next, Plaintiff relies on Martin's testimony to demonstrate that Coppola signed in her personal capacity. Plf. Opp. at 7-8. Plaintiff misconstrues Martin's testimony. Martin explained that on a different document, the financial guarantor, Coppola previously signed her name without the POA designation. Berkowitz Decl., Ex. F at 49:1-9. Because of a glitch in the software, Martin learned that once a signature was adopted, "you could not change the signature on [the Agreement]." *Id.* As a result, the Brookdale helpdesk informed Martin that the Agreement should be signed as "Sue Coppola without the POA words after her signature." *Id.* at 49:10-20. Martin, therefore, instructed Coppola to sign the entire document without the POA designation. *Id.* at 50:1-6. However, the directive not to include "POA" after signing because of a software glitch is materially different than an instruction that Coppola should sign in her personal capacity. Consequently, although Coppola did not include the POA designation next to her signature in the Agreement, Martin's testimony does not establish that Coppola was signing in her personal, rather than representative, capacity. In fact, at a different point during her deposition, when asked who signed the Agreement, Martin answered "Her daughter, who is the POA, Susan Coppola." *Id.* at 47:16-17. Moreover, when asked whether she signed the document in her capacity as power of attorney on her mother's behalf, Coppola answered in the affirmative. Berkowitz Decl., Ex. D at 35:13-15. This testimony undermines Plaintiff's argument.

In addition, the Agreement itself indicates that Coppola signed in a representative capacity. The Agreement provides that Landers, as the resident, and AHC Florham Park, were the parties to the Agreement. Berkowitz Decl., Ex. J at 1. Landers is also referenced as the resident elsewhere in the Agreement, and the Agreement indicates that the Resident is different than the "Legal Representative/Responsible Party". *See, e.g., id.* at 13, 15. Coppola's signature appears on page

14 of the Agreement, on the "Resident/Legal Representative" line and directly below the signature section, Coppola is noted as the Legal Representative/Responsible Party. *Id.* at 14. Thus, the Agreement itself reflects that Coppola was acting in a representative capacity.

Finally, and critically, Plaintiff does not establish that the failure to include the POA designation on the Agreement legally negates the powers vested to Coppola through the POA. In New Jersey, a power of attorney is governed by the Revised Durable Power of Attorney Act ("RDPAA"), N.J. Stat. Ann. § 46:2B-8.1, *et seq.* Nothing in the RDPAA requires a power of attorney to indicate that she is acting as power of attorney when executing documents. Nothing in the POA here requires such a designation either. *See* Berkowitz Decl., Ex. I.

In short, Plaintiff fails to provide any evidence that creates a genuine dispute of material fact as to whether Coppola signed the Agreement in her representative capacity. The evidence demonstrates that Coppola executed the Agreement in a representative capacity as Landers' attorney-in-fact.

### 1. Enforceability of the Arbitration Clause

Next, Plaintiff argues that there was no mutual assent to arbitrate because the arbitration clause is too contradictory and convoluted, such that the parties did not have a mutual understanding of the terms. Plf. Opp. at 9-15. Again, an agreement to arbitrate must be "the product of mutual assent, as determined under customary principles of contract law." *Flazman v. Jenny Craig, Inc.*, 236 A.3d 990, 1001 (N.J. 2020) (quoting *Kernahan v. Home Warranty Adm'r of Fla., Inc.*, 199 A.3d 766, 776 (N.J. 2019)). Appropriate contractual language must clearly explain that a party agrees to waive his right to sue in court and that arbitration and civil litigation are distinct. *Id.* It is sufficient, however, if the agreement provides "only a general concept of the arbitration proceeding." *Id.* at 1000, 1001.

Section V of the Agreement is entitled "Agreement to Arbitrate." Berkowitz Decl., Ex. J at § 5. In this section, the parties agreed to the following

> Any and all claims or controversies arising out of, or in **any** way relating to, this Agreement or any of your stays at the Community, excluding any action for involuntary transfer or discharge, and including disputes regarding interpretation, scope, enforceability, unconscionability, waiver, preemption and/or violability of this Agreement, whether airing out of Local, State or Federal law . . . shall be submitted to binding individual arbitration, as provided below, and shall not be filed in a court of law. **The parties to this Agreement further understand that a judge and/or jury will <u>not</u> decide their case.**

*Id.* at § V.A.1 (emphases in original). The parties further agreed that "Except as otherwise stated explicitly herein, this Arbitration Provision is entered into pursuant to, is governed by, and must be interpreted and enforced under the [FAA]." *Id.* at § V.A.2. The Arbitration Clause also contains terms regarding where the arbitration will take place, selection of the arbitrator, and what law the arbitrator must apply. *Id.* at § V.A.5 -.9. Finally, the Arbitration Clause contains a delegation clause, which provides that "disputes regarding interpretation, scope, enforceability, unconscionability, waiver, preemption and/or violability of this Agreement . . . shall be submitted to binding individual arbitration, as provided below, and shall not be filed in a court of law." *Id.* at § V.A.1.

Plaintiff contends that the parties' testimony demonstrates that there was no mutual understanding of the arbitration clause. Plaintiff points to testimony from Martin, who stated that she did not have a clear understanding of the procedural rules of arbitration, including differences in confidentiality and appealability between the forums. Plf. Opp. at 10-11. As to Martin's understanding of arbitration, the testimony demonstrates that she had more than a basic understanding of the difference between arbitration and litigation. The fact that Martin was unaware of some of procedural differences between the two forums, some of which are not even

10

addressed in the Agreement, does not mean that there was a lack of understanding as to whether the parties agreed to submit claims to arbitration. Critically, Martin did not testify that she lacked an understanding as to the delegation clause and that the parties agreed to arbitrate.

Plaintiff also highlights Coppola's failure to read the arbitration clause and Brookdale's failure to discuss the clause when Coppola executed the Agreement. Plf. Opp. at 10. But Coppola's failure to read the Agreement completely does not mean that Plaintiff is not bound by it. *See Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 289 (3d Cir. 2017) (explaining that pursuant to New Jersey law, a party that assents to a contract "is bound by all terms of the contract, even those terms that the party did not read or specifically discuss"); *see also MZM Constr. Co., Inc. v. N.J. Building Laborers Statewide Benefit Fund*, 974 F.3d 386, 403 (3d Cir. 2020) ("In short, failing to read a contract does not excuse performance unless fraud or misconduct by the other party prevented one from reading.") (internal quotation and punctuation omitted). Although Martin did not discuss the arbitration clause with Coppola, Coppola concedes that Martin went over the Agreement page by page, and Coppola even asked Martin to make a correction in the cost section of the document. Berkowitz Decl., Ex. D at 35:24-36:17. Moreover, Coppola knew that she could have read the Agreement before signing or consulted an attorney, and that she could have asked questions. *Id.* at 36:25-37:22. Consequently, Plaintiff fails to point to any evidence demonstrating fraud or misconduct on Defendants' part. As a result, the testimony Plaintiff identifies does not undermine any finding as to mutual assent.

Next, Plaintiff maintains that the arbitration clause itself is "contradictory and nonsensical," such that mutual assent cannot exist. Plf. Opp. at 11-15. But the cases Plaintiff relies on are inapposite. First, in *MacDonald v. CashCall, Inc.*, 883 F.3d 220 (3d Cir. 2018), the arbitration provision included a clause stating that disputes "will be resolved by Arbitration, which

11

shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement." *Id.* at 224. The court determined that this arbitration forum selection clause was "an integral, non-severable part of the arbitration agreement." *Id.* at 232. The court noted, however, that "such a tribal arbitral forum does not exist." *Id.* at 227-28. The court, therefore, determined that the entire arbitration agreement was unenforceable because it was dependent on an illusory forum. *Id.*

Next, in *Foulke*, arbitration provisions were spread throughout multiple documents, and included confusing and inconsistent terms. The court determined that "an especially prudent purchaser who takes the time to read these documents . . . would obtain a generalized sense that a post-sale dispute would be handled through some kind of arbitration." *Foulke*, 24 A.3d at 794. Yet, the court continued that even assuming a reader discerned a generalized understanding, the documents "do not plainly convey—with precision and consistency—what the exact terms and conditions of that arbitration provision would be." *Id.* As a result, the court determined that there was no mutual assent because "[a] purchaser could easily find it difficult to harmonize and understand such dissonant terms." *Id.* at 796.

Here, all the information related to arbitration is contained in one section entitled "Agreement to Arbitrate." Berkowitz Decl., Ex. J, § 5. Thus, the Agreement's arbitration clause is materially different than the arbitration provisions in *Foulke*. And unlike *MacDonald*, the arbitration clause does not require that arbitration occur in a non-existent forum. Instead, like in *Flanzman*, 236 A.3d at 1001, the arbitration clause clearly provides that the parties agree to arbitrate claims arising out of or relating to the Agreement, and that they "further understand that a judge and/or jury will not decide their case." *Id.* at § 5.A.1. In fact, the arbitration clause provides more information than the provision at issue in *Flanzman*, which the New Jersey Supreme Court

12

concluded was sufficient. The arbitration clause explains what claims are subject to arbitration, where the arbitration will occur, who can be an arbitrator, which rules apply, and how the arbitrator will be paid. *Id.* The parties clearly agreed to give up their right to pursue applicable claims before a judge or jury. There was mutual assent to arbitrate. *See Flanzman*, 236 A.3d at 1001 (concluding that although arbitration provision "provides only a general concept of the arbitration proceeding" there was mutual assent to submit claims arbitration instead of a judge or jury); *see also Portfolio One, LLC*, 2019 WL 291157, at *4 (concluding that arbitration language in similar senior care provider contract was clear).

Plaintiff also argues that the arbitration forum is illusory because the arbitration clause provides that the New Jersey Rules of Evidence, New Jersey Rules of Civil Procedure, and New Jersey substantive law apply. Plaintiff continues that these cannot all apply in an arbitration, and it is unclear to which specific provisions should apply if arbitration occurs. Plf. Opp. at 12-13. Defendants counter that given the delegation clause, these issues should be resolved by the arbitrator. Defs. Br. at 12-13. Again, the delegation clause provides that "disputes regarding the interpretation, scope, enforceability, unconscionability, waiver, preemption and/or violability of this Agreement . . . shall be submitted to binding individual arbitration, as provided below, and shall not be filed in a court of law." Berk. Decl., Ex. J at § 5.A.1. Through a delegation clause, "contracting parties can agree that arbitrators, not courts, shall resolve arbitrability issues" by "conferring upon the arbitrators the 'exclusive authority' to decide those gateway matters." *MZM Constr. Co., Inc.*, 974 F.3d at 399 (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). "Unless the party opposing arbitration challenges 'the delegation provision specifically,' the district court 'must treat it as valid' and 'must enforce it' by sending 'any challenge to the validity' of the underlying arbitration agreement to the arbitrator." *Id.* (quoting *Rent-A-Ctr.*, 561

13

U.S. at 72) (emphasis omitted). The Court already determined that the parties generally agreed that they would arbitrate claims related to the Agreement. Which rules the arbitrator must apply in arbitration do not make the general agreement to arbitrate illusory. And because of the delegation clause, disputes about what rules apply during arbitration should be resolved by the arbitrator, not this Court.

The same is true for Plaintiff's argument that the arbitration clause is unconscionable. Plf. Opp. at 15-22. Defendants argue that because Plaintiff does not challenge the validity of the delegation clause itself, any argument about unconscionability must be resolved by the arbitrator. The Supreme Court addressed this precise issue in *Rent-A-Center*. There, an arbitration agreement contained a delegation clause stating that the arbitrator had the exclusive authority to resolve disputes relating to the interpretation, applicability, enforceability, or formation of the agreement. *Rent-A-Ctr.*, 561 U.S. at 66. The respondent, Jackson, argued that the arbitration agreement was unenforceable because it was unconscionable. *Id.* The Supreme Court explained that Jackson must specifically challenge the delegation provision. *Id.* at 72. Because Jackson only challenged the agreement as a whole, the Supreme Court concluded that his argument must be addressed in arbitration, rather than the courts. *Id.* at 73-74 ("Accordingly, unless Jackson challenged the delegation provision specifically, we must treat it as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4, leaving any challenges to the validity of the Agreement as a whole for the arbitrator.").

Here, Plaintiff does not challenge the delegation provision. Rather, Plaintiff argues that "the Arbitration Provision in its entirety is illusory and invalid for lack of mutual assent and unconscionability." Plf. Opp. at 22. Plaintiff's argument falls short in light of *Rent-A-Center*. Plaintiff's arguments about unconscionability address the arbitration clause as a whole. Plf. Opp.

at 15-22. Plaintiff does not specifically attack the delegation clause. Although Plaintiff states that there is no valid delegation clause, *id.* at 22, her argument hinges on the invalidity of the arbitration clause in its entirety, *id.* at 24 ("[T]he failure of the Arbitration Provision as a whole necessitates the failure of any purported delegation clause contained therein, for the same reasons"). Because Plaintiff fails to specifically address the delegation clause, Plaintiff's argument about unconscionability must also be addressed by the arbitrator.

### IV. CONLCUSION

For the reasons stated above, Defendants' Motion for Summary Judgment to stay and compel arbitration (D.E. 22) is **GRANTED**. An appropriate Order accompanies this Opinion.

Dated: June 3, 2022

_____
John Michael Vazquez, U.S.D.J.